UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
CLASSIC LIQUOR IMPORTERS, LTD.,     :

                                  :

                                  :    15 Civ. 6503 (JSR)

     Plaintiff,               :

                                  :        OPINION

     -v-

SPIRITS INTERNATIONAL B.V.,

     Defendant.
----------------------------------------x

JED S. RAKOFF, U.S.D.J.

    By "bottom-line" order dated December 23, 2015, this Court granted in part and denied in part defendant's motion to dismiss. This Opinion explains the reasons for that ruling.

    The declaratory judgment procedure is of critical importance to new businesses that seek to clarify their rights before expending significant resources on activities that potentially infringe a more established business's trademarks. This case illustrates why.

    Plaintiff Classic Liquor Importers, Ltd. ("Classic Liquor") is a newcomer to the liquor distribution business, established about two years ago "with the aim of becoming a leading developer, manufacturer, importer and seller of high quality spirits and wines." See Amended Complaint ("Am. Compl.") ¶ 5, ECF No. 11. Defendant Spirits International B.V. ("SPI"), by contrast, is a leader in the industry; its vodka brands include STOLICHNAYA, ELIT BY STOLICHNAYA, and ELIT.

Classic Liquor asserts that it has committed millions of dollars to developing its first product, a vodka that it plans to market under the mark ROYAL ELITE. *Id.* ¶¶ 6-7, 13. On October 30, 2014, Classic Liquor filed a trademark application in the United States Patent and Trademark Office ("USPTO") for the name ROYAL ELITE. *See* Am. Compl., Ex. A. In February 2015, the USPTO approved the ROYAL ELITE mark for publication, subject to third-party opposition.

In a cease-and-desist letter mailed to Classic Liquor on or about May 5, 2015, SPI alleged that Classic Liquor's proposed use of the ROYAL ELITE mark in connection with liquor and beverage products would infringe SPI's United States trademarks of variations of the term ELIT.[1] *See* Am. Compl., Ex. G. The letter requested that SPI withdraw its application for the ROYAL ELITE mark and limit its application for a related mark to exclude wines, spirits, and other beverages. *Id.* By letter dated May 21, 2015, Classic Liquor responded to SPI's letter, arguing that its proposed use of its ROYAL ELITE mark would not infringe SPI's ELIT marks. By letter dated July 10, 2015, SPI sought clarifications from Classic Liquor as to which products it planned to bring to market under the ROYAL ELITE mark. Without apparently responding to this last letter, Classic Liquor, on August 18, 2015, commenced this action.

---

[1] Specifically, SPI holds registered trademarks in a stylized version of the term ELIT, a figurative representation of the term ELIT, the term STOLICHNAYA ELIT, and a figurative representation of the term STOLICHNAYA ELIT. *See* Am. Compl., Ex. G.

In its Amended Complaint, filed on October 28, 2015, Classic Liquor seeks (1) a declaratory judgment that its vodka bottles and the trademarks and trade dress used thereon do not infringe SPI's trademarks, and (2) the cancellation of two of SPI's registered trademarks "on the grounds that 'elit', according to SPI, has the exact same meaning as 'elite', a descriptive term that cannot be registered with the PTO pursuant to 15 U.S.C. § 1052(e)." Am. Compl. ¶ 39.

Classic Liquor also alleged in its original complaint filed August 18, 2015 that it was preparing to market and distribute its vodka products in the United States "within a month or so" from the date of the filing of the complaint. Complaint ¶ 14, ECF No. 1. Although this language was carried over verbatim to the Amended Complaint, *see* Am. Compl. ¶ 14, this may have been unintentional, since in a declaration filed in support of plaintiff's opposition papers to the instant motion, Classic Liquor's president, Simon Alishaev, avers that "[s]ales and shipment of the ROYAL ELITE vodka to retailers commenced as early as September 2015, and the public has been purchasing [plaintiff's] ROYAL ELITE vodka[] product since then." Declaration of Simon Alishaev dated Nov. 23, 2015 ("Alishaev Decl."), ¶ 9, ECF No. 19. Mr. Alishaev further avers that "Royal Elite is currently in approximately 100 retailers in the New York metro area and is expanding to over 10 states in January 2016 — with further expansion to over 20 states through 2016." *Id.*

Mr. Alishaev also avers that, over the course of 2015, SPI filed oppositions in many countries against plaintiff's applications to register the ROYAL ELITE mark, including in Panama, South Korea, Hong Kong, and Australia. *See id.* ¶ 15. And the Amended Complaint asserts that on September 28, 2015, SPI filed an opposition to Classic Liquor's application for the ROYAL ELITE mark with the USPTO's Trademark Trial and Appeal Board ("TTAB"). *See* Am. Compl. ¶ 30. However, in a letter to Classic Liquor dated October 28, 2015 (*i.e.*, well after this litigation commenced), SPI represented that it had no present intention to sue Classic Liquor for trademark infringement and purportedly did not have such an intention when it sent its cease-and-desist letter on May 5, 2015. Nonetheless, SPI reserved its right to pursue litigation "if and when Classic Liquor launches and has any actual sales, and depending on the iteration of the mark used, and if we observe or learn of any actual consumer confusion." Declaration of Max Moskowitz dated Nov. 23, 2015 ("Moskowitz Decl."), ECF No. 18, Ex. 1 at 2.[2] On November 9, 2015, the TTAB granted Classic Liquor's motion to stay the TTAB proceedings, pending disposition of the instant action, as per its standard policy. *Id.*, Ex. 4.

On November 16, 2015, SPI moved to dismiss Counts One and Two of the Amended Complaint. With respect to Count One, SPI argued that

---

[2] SPI was evidently unaware at the time it sent the October 28, 2015 letter that Classic Liquor had already commenced sales and distribution.

the Court lacked subject-matter jurisdiction over Classic Liquor's

declaratory judgment claim for non-infringement.

The Declaratory Judgment Act is properly invoked where "there

is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal*

*& Oil Co.*, 312 U.S. 270, 273 (1941). The dispute must "admi[t] of

specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a

hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*,

549 U.S. 118, 127 (2007) (internal quotation marks omitted). While

the "Act confers on federal courts unique and substantial discretion

in deciding whether to declare the rights of litigants," *Peconic*

*Baykeeper, Inc. v. Suffolk Cty.*, 600 F.3d 180, 187 (2d Cir. 2010)

(internal quotation marks omitted), a "declaratory judgment action

should be entertained when the judgment will serve a useful purpose

in clarifying and settling the legal relations in issue, and . . .

when it will terminate and afford relief from the uncertainty,

insecurity, and controversy giving rise to the proceeding." *Fort*

*Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d

Cir. 1986) (internal quotation marks omitted).

The Second Circuit has explained that "[d]eclaratory judgment

actions are particularly useful in resolving trademark disputes, in

order to promptly resolve controversies where the alleged owner of a

trademark right threatens to sue for infringement," and, as such

"the finding of an actual controversy should be determined with some liberality" in such a case. *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996). "A more restrictive view," the Court of Appeals has explained, could require a party "to go to substantial expense in the manufacture, marketing, and sale of its [product], and subject itself to considerable liability for a violation of the Lanham Act before its right to even engage in this line of commerce could be adjudicated." *Id.*

A motion to dismiss for lack of subject-matter jurisdiction is brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Courts weighing a Rule 12(b)(1) motion 'borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein.'" *Gelmart Indus., Inc. v. Eveready Battery Co.*, 2014 WL 1512036, at *2 (S.D.N.Y. Apr. 15, 2014) (quoting *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012)). However, in considering a Rule 12(b)(1) motion, "a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

With these principles in mind, the Court turns to the substance of defendant's motion. SPI argues that the Court lacks subject-matter jurisdiction over Classic Liquor's declaratory judgment claim because the claim is impermissibly hypothetical in nature. In particular, SPI asserts (1) that Classic Liquor fails to adequately

allege that it is imminently ready to market its product under the
ROYAL ELITE mark; (2) that Classic Liquor has not sufficiently fixed
its mark such that it can be compared to SPI's marks; (3) that
evidence of actual consumer confusion is unavailable because Classic
Liquor's products are supposedly not yet on the market; and (4) that
SPI has no present intention, and has never threatened, to sue
Classic Liquor for infringement.

The first three arguments are largely premised on the notion
that Classic Liquor has not yet brought its product to market (or at
least has not yet formally so alleged in its complaints). *See, e.g.*,
Def.'s Opening Br. at 14, ECF No. 14 ("[Classic Liquor] has not
launched its products into the consumer marketplace."); *id.* at 11
("[Classic Liquor] does not adequately allege that it is imminently
ready to produce and sell to consumers vodka products bearing the
'ROYAL ELITE' mark"); *id.* at 12 ("Put simply, the Amended Complaint
does not allege facts that would evidence a concrete intention to
use the 'ROYAL ELITE' mark . . . ."); *id.* at 9 ("[C]onsumers are not
yet purchasing [Classic Liquor's] anticipated product, so there is
no evidence for or against actual confusion.")

To the extent one goes beyond the pleadings, this premise is,
obviously, undermined by Mr. Alishaev's sworn representation that
Classic Liquor has, in fact, been shipping and selling products
under the ROYAL ELITE mark since September 2015. *See* Alishaev Decl.
¶ 9. And, as noted, the affidavit is properly before the Court for
purposes of responding to defendant's jurisdictional attack. *See*

*Rowland*, 494 F.3d at 77 n.4; *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, 2010 WL 3629592, at *1 (S.D.N.Y. Sept. 16, 2010) ("[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.").[3]

Faced with this difficulty, SPI argues on reply that "even under the most generous interpretation [Classic Liquor's product] launch has been exceedingly minimal," noting that plaintiff's "papers do not state whether bottles, particularly in bars and restaurants, were placed there as promotions, or in fact were sold, and if so, with what resulting revenue." Def.'s Reply Br. at 6, 7, ECF No. 20. Similarly, SPI argues that Classic Liquor's mark and trade dress are *still* not fixed and will necessarily change because Classic Liquor's use of the "®" symbol next to the term "ROYAL" on its vodka bottles is inaccurate and because the "since 1867" notation near the bottom of its bottles is misleading. SPI's objections are, however, speculative at best, and more likely irrelevant. Because, on any reasonable interpretation of Mr. Alishaev's affidavit, Classic Liquor's products have entered the consumer marketplace, SPI's arguments that Classic Liquor has not

---

[3] Whatever uncertainty in this regard may have been created by the Amended Complaint, plaintiff's counsel advised defense counsel by email on October 28, 2015 -- weeks before the instant motion was filed -- that Classic Liquor had "already launched and [was] selling its voda [sic] products." Moskowitz Decl., Ex. 2.

sufficiently fixed its mark, has not sufficiently alleged concrete plans to launch its products, and has brought a suit in which evidence of actual consumer confusion will be unavailable are effectively without basis.

Indeed, even if the product launch had not occurred, the result here would be the same. Courts routinely find subject-matter jurisdiction in declaratory judgment actions brought by businesses that are reasonably apprehensive that they will face infringement suits with respect to marks and products they are on the verge of introducing into commerce. *See Starter Corp.*, 84 F.3d at 596 (declaratory judgment available to plaintiff who can "demonstrate an actual intent and ability to imminently engage in the allegedly infringing conduct").[4] Thus, even though Classic Liquor may not have commenced its sales and distribution at the time it filed its original complaint, it is clear that plaintiff met the *Starter Corp.* test even then. *Cf. Baur v. Veneman*, 352 F.3d 625, 637 n.11 (2d Cir. 2003) ("Although a plaintiff's standing is assessed as of the time

---

[4] *Starter Corp.* was abrogated by the Supreme Court's decision in *MedImmune* to the extent that *Starter Corp.* held that a declaratory judgment plaintiff must be under an imminent threat of liability. *See Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y. 2011) ("*MedImmune* rejected lower courts' previous requirement that a declaratory judgment plaintiff seeking to establish federal jurisdiction must demonstrate 'a reasonable apprehension of imminent suit.'" (citation omitted)). *Starter Corp.*'s "actual intent and ability" requirement remains good law, however. *See Bruce Winston*, 2010 WL 3629592, at *4 (finding that this prong of the *Starter Corp.* test "should survive because it is anchored in the requirement of the specificity and immediacy of the dispute which the Court reaffirmed in *MedImmune*").

the lawsuit is brought, post-filing events may confirm that a plaintiff's fear of future harm is reasonable." (internal quotation marks and citation omitted)).

SPI's argument as to Count One thus reduces to its contention that the dispute is hypothetical because SPI has supposedly never threatened Classic Liquor with litigation and has no present intention to sue Classic Liquor for infringement.

The claim that there was no prior threat of litigation is unpersuasive. In its letter of May 5, 2015, SPI stated that Classic Liquor's "proposed registration and use of the confusingly similar trademarks ROYAL ELITE will amount to unlawful infringement and dilution of [SPI's] registered trademark rights," and that if Classic Liquor does not cease and desist from using ROYAL ELITE, SPI will "vigorously protect[] its trademarks." This is clearly a threat of future litigation. "[S]imply holding litigation in abeyance . . . does not eliminate the case or controversy." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011).

While the May 5 letter was followed by a less aggressive letter dated July 10, 2015, seeking clarifications from Classic Liquor as to which products it planned to bring to market under the ROYAL ELITE marks, the July 10 letter by no means withdrew the substance of the May 5 letter. Defendant is not entitled to argue, after taking action that compelled plaintiff to sue to clarify its rights vis-à-vis defendant, that it did not really mean what it said in its May 5 letter. *Lee v. Makhnevich*, 2013 WL 1234829, at *4 (S.D.N.Y.

Mar. 27, 2013) ("Defendants cannot pretend now that their notices to [plaintiff] were 'just kidding,' or that [plaintiff] lacked any reasonable apprehension of liability."); *Gelmart*, 2014 WL 1512036, at *4 (where defendant had "in sum and substance[] asserted that the proposed . . . mark is infringing and dilutive" through a cease-and-desist letter, defendant's motion to dismiss declaratory judgment action for lack of subject-matter jurisdiction was denied).

SPI points to its self-serving representation in its October 28, 2015 letter to plaintiff -- sent months after this litigation commenced -- that it had no "present intent to sue Classic Liquor for trademark infringement." Moskowitz Decl., Ex. 1 at 1. But Classic Liquor can hardly be blamed for taking little comfort in this litigation-induced disclaimer, insofar as SPI expressly reserved the right in that very same letter to sue Classic Liquor for trademark infringement "if and when Classic Liquor launches and has any actual sales, and depending on the iteration of the mark used, and if we observe or learn of any actual consumer confusion." *Id.* at 2. The launch has now occurred (and, though possibly unbeknownst to SPI, had already occurred before SPI sent this letter). Moreover, SPI has opposed Classic Liquor's applications to register the mark ROYAL ELITE in many countries, including the United States. Thus, even if one were to credit (which the Court does not) defendant's assertion that it has no intention of suing plaintiff, this action presents a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co.*, 312 U.S. at 273.

In passing, it may be noted that SPI relied heavily in its briefing and at oral argument on the *Bruce Winston* case, in which my esteemed colleague Judge Koeltl found that he lacked subject-matter jurisdiction over plaintiff's declaratory judgment claim where defendant Harry Winston, Inc. did not object to plaintiff's present and planned uses of the BRUCE WINSTON mark -- despite the fact that it was opposing plaintiff's application to register the mark with the TTAB. *See Bruce Winston*, 2010 WL 3629592, at *1. But that case involved unusual circumstances that are not present here and that render the comparison inapt.

Specifically, in *Bruce Winston*, plaintiff had been using its marks for almost a decade and defendant had made clear that it took no issue with such uses. Rather, it was opposing plaintiff's attempt to register the BRUCE WINSTON mark because it would be tantamount to giving plaintiff (or a potential assignee of the mark) a "blank check" to use the mark in whatever potentially infringing way it wished going forward. *Id.* at *2. Here, by contrast, SPI explicitly advised Classic Liquor in its May 5 letter -- before Classic Liquor had even launched its products -- that it viewed its proposed use of the ROYAL ELITE mark as infringing. And even though SPI's October 28 letter attempted to walk back that threat, the October 28 letter does not purport to give Classic Liquor any assurance that SPI will not view Classic Liquor's use of the ROYAL ELITE mark as infringing

12

going forward. To the contrary, it reserves the right to sue if it observes consumer confusion. Thus, in sharp contrast to *Bruce Winston*, this action presents "a specific dispute about an imminent" or present activity. *Id.* at \*5.

Furthermore, in *Bruce Winston*, plaintiff's suit was "an attempt to derail a long-pending TTAB proceeding which had reached the trial phase," *id.* at \*1, "a maneuver by the plaintiff to avoid a decision by the TTAB on the registration of its mark," *id.* at \*5. By contrast, Classic Liquor filed this action *prior* to SPI filing a notice of opposition to Classic Liquor's application with the TTAB. Indeed, this case is far more analogous to the decision of my equally esteemed colleague Judge Castel in *Gelmart Industries*, in which the district court denied defendant's Rule 12(b)(1) motion to dismiss because defendant's "own statements in its cease-and-desist letter and its public filing with the USPTO establish[ed] 'adverse legal interests' under the Declaratory Judgment Act." *Gelmart Indus.*, 2014 WL 1512036, at \*4.[5]

---

[5] *See also Blue Athletic, Inc. v. Nordstrom, Inc.*, 2010 WL 2836303, at \*4 (D.N.H. July 19, 2010) ("[T]he combination of two demand letters and formal TTAB opposition on infringement grounds, all steeped in the language of trademark infringement, is sufficient to meet the *MedImmune* standard."); *Floyd's 99 Holdings, LLC v. Woodrum*, 2009 WL 798804, at \*5 (D. Colo. Mar. 24, 2009) ("The existence of [a TTAB] proceeding, coupled with the parties' extensive history of confrontation and negotiation concerning their competing marks and [the defendant's] prior threat of litigation, sufficiently demonstrates the existence of a case or controversy sufficient to support invocation of the Declaratory Judgment Act.")

At bottom, SPI is seeking to preserve an option to sue Classic Liquor at its discretion -- potentially after Classic Liquor, an upstart in the industry, spends millions of dollars building brand recognition and establishing a foothold in the marketplace. While one can understand why holding this litigation in abeyance might be attractive to defendant, the Declaratory Judgment Act is designed precisely for situations like these where a party is put on notice by another that it may be infringing the noticing party's rights and seeks to "clarify[] and settl[e] the legal relations in issue," as well as "relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Fort Howard Paper Co.*, 787 F.2d at 790. To state the obvious, the declaratory judgment procedure would be pointless in this context if a party had to wait to be sued for infringement before seeking a declaratory judgment of non-infringement.

SPI urges, in the alternative, that even if jurisdiction exists, the Court should nevertheless decline to exercise it as a matter of discretion, for substantially the same reasons that it argues that the Court lacks jurisdiction. The Court rejects that invitation for substantially the same reasons that it finds that it does have jurisdiction over Count One. In addition, while SPI argues that the Court should defer to the TTAB proceedings as that body "is particularly qualified to adjudicate the parties' trademark registration dispute," Def.'s Reply Br. at 7-8, the TTAB staff, per its standard policy, has already stayed those proceedings pending

14

the outcome of this action. It would be odd for this Court to dismiss this action in order to defer to the TTAB, when the TTAB has already stayed the proceedings pending before it in order to defer to this Court. Moreover, the Second Circuit has held that dismissal of a trademark action involving infringement in deference to a USPTO registration determination may constitute an abuse of discretion, as "[d]elaying consideration of [plaintiff's] claim pending the outcome of the TTAB proceedings undercuts the purpose of declaratory relief by forcing [plaintiff] either to abandon use of trademarks . . . or to persist in piling up potential damages." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2d Cir. 1988) (internal quotation marks omitted).

For all of these reasons, the Court in its December 23, 2015 Order denied defendant's motion to the extent it sought to dismiss Count One.

Defendant's motion, however, also sought to dismiss Count Two, plaintiff's cancellation claim, *either* because the Court lacked subject-matter jurisdiction (a claim the Court rejects since the claim is supplemental to plaintiff's declaratory judgment action over which the Court, as detailed above, has subject-matter jurisdiction), or because, under Federal Rule of Civil Procedure 12(b)(6), Count Two failed to state a claim.[6]

---

[6] As plaintiff's counsel conceded at oral argument, plaintiff invoked the wrong statutory provision, 15 U.S.C. § 1064, in support of its cancellation claim in its Amended Complaint, as § 1064 only authorizes petitions to the USPTO to cancel trademark registrations.

Pursuant to 15 U.S.C. § 1052(e)(1), "[a] mark is not registrable when used in connection with goods of which it is 'merely descriptive.'" *New Look Party Ltd. v. Louise Paris Ltd.*, 2012 WL 251976, at *5 n.7 (S.D.N.Y. Jan. 11, 2012). In support of its Count Two claim, Classic Liquor seizes on SPI's contention in its TTAB filing that "[t]he words 'Elit' and 'Elite' are identical in sound and *commercial impression*, and are nearly identical in appearance." Am. Compl. ¶ 30 (emphasis added by plaintiff). In what is essentially a "retroactive estoppel" argument, Classic Liquor asserts that if SPI now contends that "elit" and "elite" are identical, then SPI's marks that are still contestable on descriptiveness grounds must be cancelled because "Elite" is a merely descriptive term. *See id.* ¶ 45 ("[T]he Court must cancel SPI's United States trademark registration nos. 4,537,800 and 4,567,379 because SPI has declared that 'elit' is identical to 'elite', a merely descriptive term.").

Classic Liquor does not itself plead, other than in wholly conclusory fashion, that "elit" is a merely descriptive term; it confines its briefing on this point entirely to its retroactive estoppel theory. But Classic Liquor has cited no authority for its novel theory of estoppel -- indeed, it barely defends its

---

*See Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 758 (Fed. Cir. 1987) (section 1064 "does not . . . authorize suits for cancellation in district courts"). Plaintiff should have invoked § 1119, which provides that "[i]n any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part." 15 U.S.C. § 1119.

cancellation claim at all in its opposition brief -- and SPI's argument that trademark law recognizes no such principle of estoppel (retroactive or otherwise) goes unrebutted. *cf. Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 534 (S.D.N.Y. 2012) ("[I]n general, courts do not bind parties to their statements made or positions taken in ex parte application proceedings in front of the PTO."). While Classic Liquor would perhaps have a viable cancellation claim if it plausibly pled that "elit" is a descriptive term that has not acquired secondary meaning, it does not so plead. Quite to the contrary, Classic Liquor took the position in its May 21, 2015 letter to SPI -- which it attaches to its Amended Complaint -- that "elit" is a "coined term" (which, by definition, is not descriptive). Am. Compl., Ex. I, ¶ 3; *see Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104 (2d Cir. 1985) ("Fanciful terms are those that are 'coined,' having no independent meaning . . . . [T]erms that are . . . fanciful may be registered as trademarks even if they have not acquired secondary meaning."). Evidently, then, plaintiff's theory of estoppel only reaches defendant's inconsistent statements, but not its own. In any event, it is enough to say that Classic Liquor's estoppel-based theory of cancellation has no basis in trademark law. As such, the Court dismisses Count Two with prejudice.

In sum, for the foregoing reasons, the Court, in its December 23, 2015 Order, granted defendant's motion to dismiss as to

plaintiff's cancellation claim, but denied it as to plaintiff's

declaratory judgment claim.

Dated:     New York, NY
           December 29, 2015

JED S. RAKOFF, U.S.D.J.