UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
CLASSIC LIQUOR IMPORTERS, LTD.,          :
                                         :
                                         :   15 Civ. 6503 (JSR)
        Plaintiff,                       :
                                         :   OPINION AND ORDER
        -v-                              :
                                         :
SPIRITS INTERNATIONAL B.V.,              :
                                         :
                                         :
        Defendant.                       :
----------------------------------------x

JED S. RAKOFF, U.S.D.J.

This trademark infringement and false advertising dispute pits plaintiff Classic Liquor Importers, Ltd. ("Classic Liquor"), a newcomer to the liquor business that recently launched a line of vodkas under the mark ROYAL ELITE, against Spirits International B.V. ("SPI"), a well-established industry player. Among other things, this case concerns whether plaintiff's use of its ROYAL ELITE mark infringes defendant's marks in variations of the term ELIT, which defendant uses in conjunction with its "elit by Stolichnaya" vodka brand. Before the Court is plaintiff's motion seeking summary judgment on its declaratory judgment claim for non-infringement and also seeking to dismiss defendant's four counterclaims. For the reasons stated below, the Court dismisses defendant's Lanham Act counterclaim and common law unfair competition counterclaim, but otherwise denies plaintiff's motion.

Classic Liquor, a New York corporation, was formed in 2014 by three brothers, Simon, Joseph, and Yuri Alishaev, "with the aim of

1

becoming a developer, manufacturer, importer and seller of spirits and wines." Def. Spirits Int'l B.V.'s Local Rule 56.1 Responses and Counterstatement to Classic Liquor Importers's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s Rule 56.1 Stmt.") ¶ 151, ECF No. 48; Pl.'s Local Civil Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s Rule 56.1 Stmt.") ¶ 1, ECF No. 37.[1]

Classic Liquor selected ROYAL ELITE as its primary housemark and has filed three trademark applications to register variations of that mark with the United States Patent and Trademark Office ("USPTO"), as follows:

1. ROYAL ELITE -- U.S. Trademark Application Serial No. 86/439,435, filed October 30, 2014 in international class 33, for wines and spirits;

2. ROYAL ELITE -- U.S. Trademark Application Serial No. 86/521,045, filed February 15, 2015, in multiple classes including 005, 030, 032, and 033, for wines, spirits, and other beverages;

3. ROYAL ELITE VODKA -- U.S. Trademark Application Serial No. 86/832,303, filed November 25, 2015 in international class 33, specifically for vodka.

Pl.'s Rule 56.1 Stmt. ¶ 19; Def.'s Rule 56.1 Stmt. ¶ 157.

---

[1] All citations to facts set forth in a party's Local Rule 56.1 Statement are citations to facts that were undisputed in relevant part by the opposing party, unless otherwise noted.

The USPTO has approved these marks for publication, and SPI has filed oppositions against the marks bearing Serial Numbers 86/439,435 and 86/521,045.[2] See Pl.'s Rule 56.1 Stmt. ¶ 19.

Classic Liquor currently markets various vodkas under the "Royal Elite" name in New York, see id. ¶ 2, and claims to have expended millions of dollars in manufacturing, importing, and marketing these products.

SPI, a Netherlands LLC, is part of the SPI Group, a leading international producer, seller, and distributor of wines and spirits. See Def.'s Rule 56.1 Stmt. ¶ 154. Non-party Stoli Group USA markets and sells elit by Stolichnaya in the United States (id. ¶ 155A) — a product that defendant touts as "perhaps one of the most sought-after ultra premium vodkas" on the market, Spirits Int'l B.V.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Opp.") at 24, ECF No. 47.[3] At the time that this action was filed, SPI owned the marks at issue here.[4] See Def.'s Rule 56.1 Stmt. ¶ 155A.

---

[2] As of the close of briefing, the USPTO had not yet published the mark bearing Serial Number 86/832,303 for opposition.

[3] For the sake of simplicity and because the distinctions between the SPI Group entities are not material to this action, the Court refers to SPI Group entities as "SPI" or "defendant" throughout this Opinion and Order.

[4] According to defendant, the U.S. trademarks at issue in this case are being transferred to another entity, ZHS IP Americas S.a.r.l., as part of a corporate restructuring. See Def.'s Rule 56.1 Stmt. ¶ 155A. SPI represented in its papers that both it and the transferee are willing to continue to defend this case in the name of the original defendant and are also willing to consent to a substitution of parties if one is requested. See Def.'s Opp. at 4

SPI contends that Classic Liquor is infringing its rights in four U.S. trademark registrations, three of which are at least partially figurative or stylized, and one of which is a word mark (collectively, the "ELIT Marks"). The four registered marks are as follows:

1. Registration No. 3,044,248, issued on January 17, 2006:



2. U.S. Registration No. 3,325,498, issued on October 30, 2007:

**STOLICHNAYA ELIT**

3. U.S. Registration No. 4,567,379, issued on July 14, 2014:



4. U.S. Registration No. 4,537,800, issued on May 27, 2014:



Pl.'s Rule 56.1 Stmt. ¶ 16.

---

n.2. The issue of which SPI Group entity formally owns the marks at present is thus immaterial for purposes of this motion.

Plaintiff's "Royal Elite" and defendant's "elit by Stolichnaya" are marketed in the United States using the bottle designs depicted side-by-side below:

 

Def.'s Rule 56.1 Stmt. ¶¶ 161-62; Decl. of Max Moskowitz dated March 21, 2016 ("Moskowitz Decl. dated March 21, 2016"), Ex. 19.[5]

In a cease-and-desist letter dated May 5, 2015, SPI alleged that Classic Liquor's proposed registration and use of ROYAL ELITE would infringe defendant's rights in the ELIT Marks. See id., Ex. 36. Specifically, SPI alleged that Classic Liquor's planned use of

_____

[5] Classic Liquor's bottle recently underwent a minor redesign, as discussed further below.

ROYAL ELITE in connection with certain beverages "is likely to cause confusion in the marketplace with, and/or is likely to dilute the distinctiveness of [SPI's] famous ELIT and STOLICHNAYA ELIT marks for alcoholic beverages . . . amount[ing] to unlawful infringement and dilution of [SPI's] registered trademark rights." Id. at 2. In its letter, SPI requested that Classic Liquor withdraw its application to register ROYAL ELITE (Serial No. 86/439,435) and narrow the scope of its second application for that mark (Serial No. 86/521,045) to exclude wines, spirits, and other beverages. See id.

Classic Liquor declined to do so and, on August 18, 2015, commenced this action. Count One of its operative pleading seeks a declaratory judgment that Classic Liquor does not infringe and is not likely to infringe defendant's rights in the ELIT Marks. See First Am. Compl. ¶ 33, ECF No. 11. Count Two (since dismissed)[6] sought cancellation of SPI's U.S. trademark Registration Nos. 4,537,800 and 4,567,379. See id. ¶ 39.

On January 6, 2016, SPI filed an Answer to plaintiff's Amended Complaint in which it brought counterclaims for: (1) false advertising and unfair competition in violation of § 43(a)(1)(B) of

---

[6] In a bottom-line order issued on December 23, 2015, the Court granted SPI's motion to dismiss plaintiff's Amended Complaint in part and denied it in part. See Order dated Dec. 23, 2015, ECF No. 22. As explained in the Court's subsequent Opinion, the controversy between the parties was sufficiently immediate and real to give rise to jurisdiction over plaintiff's declaratory judgment claim. See Classic Liquor Importers, Ltd. v. Spirits Int'l B.V., 151 F. Supp. 3d 451, 455-57 (S.D.N.Y. 2015). The Court dismissed plaintiff's cancellation claim, however, because the convoluted estoppel theory on which plaintiff relied has no basis in trademark law. See id. at 459-60.

the Lanham Act; (2) unfair competition in violation of New York common law; (3) deceptive trade practices in violation of New York General Business Law § 349; and (4) false advertising in violation of New York General Business Law § 350. See Answer, Affirmative Defenses, and Counterclaims of Def. Spirits Int'l B.V. ("Def.'s Answer") ¶¶ 61-83, ECF No. 24. SPI's counterclaims are based on two separate aspects of plaintiff's bottle: (1) the inclusion of the trademark registration symbol (the "® symbol") next to the word "ROYAL" (falsely signifying that plaintiff owns a trademark registration in ROYAL or ROYAL ELITE) and, (2) the inclusion of the words "Since 1867" on the front of plaintiff's bottle.[7] See id.

As noted, plaintiff moves for summary judgment on its remaining claim for a declaration of non-infringement and on all four of defendant's counterclaims. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a genuine dispute of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), and, to award summary judgment, the court must be able to find "after drawing all reasonable inferences in

---

[7] On February 29, 2016, days before the close of discovery (a date which had already been extended twice), defendant sought leave to amend its Answer to add a counterclaim for infringement. The Court denied the application as untimely and explained the reasons for that denial in an Order issued on March 11, 2016. See Memorandum Order dated March 11, 2016, ECF No. 35.

7

favor of a non-movant" that "no reasonable trier of fact could find in favor of that party," Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). A fact is considered material "if it might affect the outcome of the suit under the governing law," and a dispute of fact is deemed "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).

### I.   Plaintiff's Claim for a Declaratory Judgment of Non-infringement

Beginning with plaintiff's claim for a declaratory judgment of non-infringement, both parties make threshold arguments, neither of which is meritorious.

Reprising a version of an argument that the Court rejected in its Opinion on defendant's motion to dismiss, defendant argues that because plaintiff redesigned its vodka bottle in the course of this litigation and is planning to discontinue its prior design, the Court lacks jurisdiction over plaintiff's claim under the Declaratory Judgment Act. Under the Declaratory Judgment Act, "[i]n a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act is properly invoked where "there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

Plaintiff's changes to the bottle design are decidedly minimal. The word "ROYAL" has been enlarged, such that "ROYAL" is now close to the same font size as the word "ELITE." A label bearing the ROYAL ELITE mark around the neck of the bottle has been replaced with a sticker bearing the mark vertically. The new bottle is slightly shorter than its predecessor, and there are a few other, equally immaterial additions.

Nonetheless, SPI argues that any controversy as to Classic Liquor's existing bottle design will soon be moot and that any dispute concerning the new design is not yet concrete, given that the new design is not yet on the market. But SPI's May 5, 2015 cease-and-desist letter did not limit its threat to sue to specific bottle designs. To the contrary, the letter asserted that plaintiff's use of its ROYAL ELITE mark in connection with beverages would infringe SPI's rights in the ELIT Marks. See Moskowitz Decl. dated March 21, 2016, Ex. 36. By the same token, in its Amended Complaint, plaintiff prayed for a judgment "[d]eclaring that Classic Liquor has not infringed and is not likely to infringe [the ELIT Marks]," as well as for "such other and further relief as the Court may deem just and proper." First Am. Compl. at 9. Thus, from the very beginning of this litigation, the dispute between the parties has encompassed not just plaintiff's bottle design as it existed at

9

the time of the filing of its Amended Complaint, but plaintiff's use
of its ROYAL ELITE marks generally.

Implicit in SPI's argument is the proposition that,
notwithstanding the broad contours of the dispute described above,
any declaratory judgment that issues in this case should be limited
to designs in existence at the time plaintiff's Amended Complaint
was filed. But declaratory relief need not be fashioned so narrowly.
Indeed, it would undermine the utility of the declaratory judgment
procedure if a defendant could re-litigate infringement every time a
product design was altered, regardless of how immaterially. Here,
declaratory relief could and would terminate uncertainty as to the
new bottle design, as well as the controversy generally, thus
effectuating the purposes of the Declaratory Judgment Act. See
Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir.
1992) ("[A] court must entertain a declaratory judgment action: (1)
when the judgment will serve a useful purpose in clarifying and
settling the legal relations in issue, or (2) when it will terminate
and afford relief from the uncertainty, insecurity, and controversy
giving rise to the proceeding."). Accordingly, the Court has
jurisdiction over plaintiff's claim.

The Court also rejects SPI's alternative argument that the
Court should exercise its discretion under the Declaratory Judgment
Act to decline to hear plaintiff's claim. As for the supposed
absence of evidence of consumer confusion given that the new bottle
design has not yet launched, the evidence pertaining to confusion

over the prior (overwhelmingly similar) design is highly probative of likely confusion vel non with respect to the new design. More to the point, it is well established that a plaintiff that has been threatened with litigation and that has "demonstrate[d] an actual intent and ability to imminently engage in the allegedly infringing conduct," need not have actually launched its product into the marketplace — thereby inviting financial ruin — before seeking a declaratory judgment. See Starter Corp. v. Converse, Inc., 84 F.3d 592, 596 (2d Cir. 1996), abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007). As this Court observed at the pleadings stage, the declaratory judgment procedure is designed to deal with precisely such a situation. See Classic Liquor Importers, Ltd., 151 F. Supp. 3d at 453 ("The declaratory judgment procedure is of critical importance to new businesses that seek to clarify their rights before expending significant resources on activities that potentially infringe a more established business's trademarks."). And, in any case, as the Court has also noted in the context of this action, the touchstone for trademark infringement under the Lanham Act is likelihood of confusion, not actual confusion. See Memorandum Order dated March 11, 2016, at 3.

Classic Liquor, for its part, argues that SPI's failure to bring a compulsory counterclaim for trademark infringement entitles it to a default judgment of non-infringement. Specifically, Classic Liquor argues that its declaratory judgment claim is "per se unopposed" because the burden of proving infringement lies with the

defendant in a declaratory action for non-infringement. Mem. of Law in Support of Pl. Classic Liquor Importers, Ltd.'s Mot. for Summ. J. ("Pl.'s Br.") at 18, ECF No. 38.

Classic Liquor is correct that declaratory judgment plaintiffs do not have the burden of proving non-infringement. See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843, 849-50 (2014). Classic Liquor is also correct that trademark infringement is generally a compulsory counterclaim in the context of a declaratory action for non-infringement. See Am. Plastic Equip., Inc. v. Toytrackerz, LLC, 2008 WL 917635, at *9 (D. Kan. Mar. 31, 2008) ("[C]ourts have consistently applied the compulsory counterclaim doctrine to a claim seeking declaratory relief for trademark infringement and an opposing claim for damages for infringement of the same trademarks."). But none of this means that Classic Liquor is entitled to a default judgment as a result of SPI's failure to bring a timely counterclaim for infringement. Classic Liquor cites no authority for that proposition and, to this Court's knowledge, there is none.

To the contrary, the Supreme Court's decision in Medtronic necessarily stands for the proposition that failure to bring a counterclaim for infringement does not result in a default judgment; rather, as the Court held, the burden remains with defendant to prove infringement.[8] Similarly, in Starter Corp., plaintiff's

---

[8] Plaintiff tries to distinguish Medtronic as involving a patent licensee who was contractually precluded from bringing a

12

declaratory judgment claim for non-infringement went to trial even though defendant failed to counterclaim for non-infringement.[9] See Starter Corp. v. Converse, Inc., 170 F.3d 286, 290-91 (2d Cir. 1999). In fact, after the jury found a likelihood of confusion, the district court issued an injunction against Starter Corp. over Starter Corporation's objection that the court lacked authority to do so because no counterclaim for infringement had been brought. See id. at 291-92. Although the Second Circuit held that the district court's injunction was overly broad, it affirmed the district court's authority to issue one. See id. at 299 ("[W]e hold that the district court did not abuse its discretion by invoking its authority to grant a permanent injunction in favor of Converse sua sponte and despite Converse's earlier abandonment of such relief.").

---

counterclaim. But Medtronic does not suggest that the reason the defendant failed to bring a counterclaim is relevant to the analysis. And if the reason for such failure were relevant, it would cut against plaintiff's argument in this case given that defendant did seek leave to amend its Answer to assert a counterclaim for infringement (albeit in an untimely manner). See Memorandum Order dated March 11, 2016, at 1.

[9] Plaintiff mischaracterizes Starter Corp. when it states in its reply brief that the litigation in that case "continued only relative to the compulsory counterclaims that Starter Corp. had actually filed in the case — the claims of trademark infringement." Reply Mem. of Law in Further Support of Pl. Classic Liquor Importers, Ltd.'s Mot. for Summ. J. at 7, ECF No. 54. Starter Corp., the declaratory judgment plaintiff in the case, filed no such counterclaim and neither did defendant Converse. See Starter Corp. v. Converse, Inc., 1996 WL 694437, at *2 (S.D.N.Y. Dec. 3, 1996) ("While Converse has not counterclaimed for infringement, its litigation position with respect to the proposed Starter athletic shoes has been and remains that the Starter logos will infringe Converse's registered mark. Converse will bear the traditional burden of proving infringement." (emphasis added)).

Thus, plaintiff's argument that it is entitled to a default judgment because defendant has no pending counterclaim for trademark infringement lacks merit. The nature of relief that SPI will be entitled to if it were to prevail at trial on plaintiff's claim is an issue for another day. See 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."); Fed. R. Civ. P. 54(c) ("Every . . . final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

Turning to the merits of plaintiff's claim, trademark infringement under the Lanham Act requires that the trademark holder have "a valid mark entitled to protection and that the [alleged infringer's] use of it is likely to cause confusion." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995) (internal quotation mark omitted). "A mark is entitled to protection when it is inherently distinctive . . . [or] if it has acquired secondary meaning." Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 117 (2d Cir. 1999). "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 383 (2d Cir. 2005) (internal quotation marks omitted).

In assessing likelihood of confusion, courts in this Circuit apply the eight-factor balancing test formulated by Judge Friendly

14

in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.

1961). The eight factors are:

> (1) strength of the trademark; (2) similarity of the
> marks; (3) proximity of the products and their
> competitiveness with one another; (4) evidence that the
> senior user may "bridge the gap" by developing a product
> for sale in the market of the alleged infringer's product;
> (5) evidence of actual consumer confusion; (6) evidence
> that the imitative mark was adopted in bad faith; (7)
> respective quality of the products; and (8) sophistication
> of consumers in the relevant market.

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115

(2d Cir. 2009).

"[T]he evaluation of the Polaroid factors is not a mechanical

process where the party with the greatest number of factors weighing

in its favor wins." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d

43, 46 (2d Cir. 2000) (citation omitted). Conversely, "[n]o single

factor is dispositive, nor is a court limited to consideration of

only these factors." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360

F.3d 125, 130 (2d Cir. 2004). "Rather, a court should focus on the

ultimate question of whether consumers are likely to be confused."

Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577,

584 (2d Cir. 1993). With these cautions in mind, the Court analyzes

the application of each of the Polaroid factors in turn:

**Strength of the trademark**. A mark's strength is a function of

its distinctiveness, whether inherent or whether acquired in the

marketplace. See Brennan's, Inc., 360 F.3d at 130. Determination of

strength therefore begins with assessing whether the mark has the

inherent distinctiveness that would entitle it to protection in the

absence of secondary meaning. As such, the inquiry into the strength of the trademark dovetails with the threshold question of whether the mark is entitled to protection at all — and the two issues are often analyzed jointly for that reason. See, e.g., Juicy Couture, Inc. v. Bella Int'l Ltd., 930 F. Supp. 2d 489, 499 (S.D.N.Y. 2013) ("Because the analysis for the first prong of an infringement claim — whether a trademark is valid and entitled to protection — overlaps with the analysis used to assess the first Polaroid factor . . . the Court discusses the strength and validity of the [plaintiff's] Marks together.").

Registered marks, like those at issue here, "are presumptively distinctive" under the Polaroid analysis. Id. However, this presumption "can be overcome by showing that a registered mark is generic or is descriptive without secondary meaning." Id. And while two of SPI's marks are incontestably distinctive for protectability purposes because they have been registered for more than five years, see 15 U.S.C. §§ 1065 and 1115(b), that does not make every component of those marks irrefutably strong for purposes of the Polaroid analysis. See Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077-78 (2d Cir. 1993). Rather, "the strength of an incontestable registered trademark could be overcome by the use of a descriptive or weak portion of the mark." Id. at 1077.

Here, SPI does not have a word mark solely in the word ELIT. Rather, it has a mark in a stylized rendering of ELIT (Registration No. 4,537,800), a word mark in STOLICHNAYA ELIT (Registration No.

3,325,498), a composite mark that is composed of the same stylized rendering of ELIT in conjunction with a flame logo (Registration No. 4,567,379), and a composite mark that is composed of the stylized rendering of ELIT, the flame logo, Russian characters, and a stylized rendering of STOLICHNAYA (Registration No. 3,044,248). SPI does not contend, however, that its likelihood of confusion theory has anything to do with the stylized or logo components of the ELIT Marks, but rather that the likelihood of confusion arises solely from the similarities between ELITE and ELIT. It thus analyzes ELIT independent of its stylization and the other elements of the ELIT Marks. For that reason, for purposes of analyzing the strength of the relevant component of SPI's marks (i.e., the term ELIT), the Court will do the same.

"Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." Star Indus., Inc., 412 F.3d at 384-85 (internal quotation marks and alterations omitted). Arbitrary marks (like CAMEL cigarettes) and fanciful marks (like KODAK) "do not communicate any information about the product either directly or by suggestion" and enjoy the "strongest" protection. Id. at 385. Suggestive marks (like COPPERTONE sunscreen), on the other hand, require "imagination, thought and perception to reach a conclusion as to the nature of goods," and are also deemed inherently distinctive. Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997) (internal quotation marks omitted). Descriptive marks (like CHAPSTICK) "are

those consisting of words identifying qualities of the product."
Star Indus., Inc, 412 F.3d at 385. A descriptive mark is not
inherently distinctive and "qualifies for protection only if it has
acquired secondary meaning." Time, Inc., 173 F.3d at 117 (emphasis
added). Finally, generic marks (like SHAMPOO) "consist[] of words
identifying the relevant category of goods or services" and "are not
protectable under any circumstances." Star Indus., Inc., 412 F.3d at
385.

SPI contends that ELIT is a coined term without any English
meaning and that the ELIT Marks are thus fanciful and entitled to
maximum protection under the Lanham Act. But a coined term is not a
"fanciful" one merely because it cannot be found in Webster's Third.
To the contrary, "[a] slight misspelling of a word will not
generally turn a descriptive word into a nondescriptive mark." 2
J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
§ 11:31 (4th ed.). "If the misspelling is so phonetically identical
to the original descriptive term that buyers will recognize it as
descriptive, then the misspelled mark is still 'descriptive.'" Id.;
see also Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S.
446, 455 (1911) (holding that a trademark in "Ruberoid" — a
misspelling of "Rubberoid" — was descriptive and did not "become[]
arbitrary by being misspelled"). Thus, "C-Thru" has been held
descriptive in connection with transparent and opaque products;[10]

---

[10] See C-Thru Ruler Co. v. Needleman, 1976 WL 21018, at *1-2, *9
(E.D. Pa. Feb. 25, 1976).

"Solar Glo" has been held descriptive of "signs illuminated through the reflection of sunlight";[11] and "Spex, Inc." has been held descriptive of a purveyor of eyeglasses[12].

In branding its self-proclaimed "ultra-luxury" vodka under the ELIT Marks, Def.'s Opp. at 25, SPI has simply dropped the last letter of a well-known word that is synonymous — in adjectival form — with excellence and exclusivity. While the pronunciation of ELIT is not self-evident, SPI itself asserts that ELIT is pronounced "elite." In fact, SPI premises its likelihood of confusion argument in significant part on "aural confusion." Id. at 19 ("'Elite' and 'Elit' indisputably are pronounced the same by English speakers."). SPI goes as far as to argue that ELITE and ELIT "have the same commercial impression." Id. at 2. Thus, far from being a coined, fanciful mark along the lines of KODAK, ELIT is quite obviously intended to be the functional equivalent of the word "elite."

ELIT (as a bastardization of ELITE) falls into a category of marks aptly described in the case law as "self-laudatory" terms — that is, "[m]arks that extol some feature or attribute of the goods or services." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:17 (4th ed.). The majority view is that self-laudatory terms such as "Best," "Supreme," "Quality,"

---

[11] See Unisplay S.A. v. Am. Elec. Sign Co., 1993 WL 493857, at *16 (E.D. Wash. May 26, 1993).

[12] See Spex, Inc. v. Joy of Spex, Inc., 847 F. Supp. 567, 574 (N.D. Ill. 1994) ("By employing a misspelling of the word, 'specs,' the name, 'Spex, Inc.,' describes, or 'conveys the essence,' of a store that sells glasses.").

"Premier," "Exquisite," "Famous," and so on, are descriptive and thus entitled to no trademark protection absent secondary meaning. See id.; see also In re Nett Designs, Inc., 236 F.3d 1339, 1341 (Fed. Cir. 2001) ("Laudatory marks that describe the alleged merit of the goods are descriptive because they simply describe the characteristics or quality of the goods in a condensed form."); In Re Quality Trans Parts Inc., 2005 WL 3316567, at *2 (T.T.A.B. Nov. 22, 2005) ("It is settled that laudatory terms generally are deemed to be merely descriptive and therefore unregisterable on the Principal Register.").

Nonetheless, there is conflicting authority as to the classification of self-laudatory marks in the Second Circuit. Most cases indicate such marks are descriptive. See Murphy v. Provident Mut. Life. Ins. Co. of Phila., 923 F.2d 923, 927 (2d Cir. 1990) ("Marks that are laudatory and that describe the alleged qualities or characteristics of a product or service are descriptive marks."); Supreme Wine Co. v. Am. Distilling Co., 310 F.2d 888, 890 (2d Cir. 1962) ("[L]audatory epithets are normally available to all the world, and are not entitled to trademark protection."); PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 563 (2d Cir. 1990) (noting that terms "indicating the . . . merits of a product" are descriptive). But a relatively more recent case suggests they may be suggestive. See Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1509 (2d Cir. 1997) ("A term that is merely self-laudatory, such as 'plus' or 'super,' seeking to convey the impression that a product

is excellent or of especially high quality, is generally deemed suggestive."). In the face of this mixed guidance, district courts in the Second Circuit have made case-by-case determinations as to whether a particular laudatory term as used in context is "descriptive" or "suggestive." See, e.g., Alpha Recycling, Inc. v. Crosby, 2016 WL 1178774, at *5 (S.D.N.Y. Mar. 23, 2016) (finding the term "Alpha" to be suggestive when used in reference to recycling services).

In this case, ELIT is simply descriptive. The use of ELIT (again, pronounced "elite") to describe a spirit readily indicates to consumers that the product is a high-caliber and exclusive one. In contrast to the mark at issue in Alpha Recycling, it is not the case "that a person confronted with the Mark will grasp the laudatory nature of the term only after considerable use of 'imagination, thought, and perception.'" Id. at *5. Moreover, in the most closely analogous case, the Second Circuit has held that the similar word "supreme" is not registrable as a trademark for vodka because the "word 'supreme' is so totally lacking in distinctiveness, originality and uniqueness that, in the absence of compelling proof that it has acquired a secondary meaning to the buying public, it is not entitled to trademark protection." Supreme Wine Co., 310 F.2d at 889. This is another way of saying that such a term is merely descriptive.

In an attempt to avoid this result, SPI argues that "elite" is not a descriptive term because it is not an adjective describing a

21

quality or characteristic, but rather a noun that "normally designates a group or class of persons in society." Def.'s Opp. at 14. In a squarely on-point case, the Eighth Circuit soundly and persuasively rejected this precise argument. In holding that "elite" constitutes a self-laudatory, descriptive term, the court explained:

> Our dictionary defines "elite," when used as an adjective, to be synonymous with "choice, superior, select." Webster's Third International Dictionary 736 (1976) (citing "an [elite] brand of coffee" as example of usage). Although plaintiff contends, based on another dictionary, that "elite" may refer only to persons, we conclude that the word may be used to describe objects as well. Because the word "elite" indicates superior quality, as used here it is a "self-laudatory" mark. . . . Because "elite" is descriptive, plaintiff must show that the mark has acquired secondary meaning to obtain protection.

Jeld-Wen, Inc. v. Dalco Indus., Inc., 198 F.3d 250, 1999 WL 1024002, at *3 (8th Cir. 1999) (unpublished per curiam) (footnote omitted).[13]

Ironically, defendant's contention is also contradicted by its own 2015 Preliminary Marketing Plan for elit by Stolichnaya, in which it uses "elite" as an adjective to describe bartenders. See Moskowitz Decl. dated March 21, 2016, Ex. 42 at SPI-0000179 ("Just as everyone has their own original signature, so the world's elite bartenders create their own cocktails . . . ." (emphasis added)).

In sum, the Court finds that ELIT is a self-laudatory and descriptive term that lacks inherent distinctiveness (and thus inherent strength). To the extent the ELIT Marks are inherently

_____

[13] The Supreme Court has used "elite" as an adjective as well. See, e.g., PGA Tour, Inc. v. Martin, 532 U.S. 661, 686-87 (2001) (referring to "elite events" and "elite golf tournaments").

distinctive, that distinctiveness arises exclusively from other components of the Marks (such as the stylization of ELIT and the inclusion of the flame logo in certain of the Marks), which, as noted, SPI cannot and does not rely on here.[14]

As a descriptive term, if ELIT has not acquired secondary meaning, then defendant is entitled to no trademark protection in the term and the inquiry into likelihood of confusion would end there. See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1040 (2d Cir. 1992) ("A descriptive term is subject to protection under section 43(a) only if . . . the term has acquired a secondary meaning in its particular market — [such] that the consuming public primarily associates the term with a particular source."). "When attempting to resolve this essentially factual determination, [the Second Circuit has] assessed advertising expenditures, consumer studies, unsolicited media coverage of the

_____

[14] At oral argument, defense counsel took the position that the Court had already decided that ELIT is not a descriptive term in its Opinion on defendant's motion to dismiss. See Transcript dated May 5, 2016 at 17-18, ECF No. 60. This is inaccurate. The Court dismissed plaintiff's cancellation claim because it was premised on an unsupported theory that cancellation on descriptiveness grounds could be based solely on historical inconsistencies in SPI's position as to the meaning of ELIT. Indeed, the Court noted that "[w]hile Classic Liquor would perhaps have a viable cancellation claim if it plausibly pled that 'elit' is a descriptive term that has not acquired secondary meaning, it does not so plead." Classic Liquor Importers, Ltd., 151 F. Supp. 3d at 460. The Court also noted in passing the parties' mutual position that ELIT is a "coined term" and stated that coined terms "by definition" are not descriptive. Id. But while that is true of terms that are truly coined (like KODAK), it is not true of bastardizations of actual English words (like ELIT). The latter category of terms are not truly "coined" in the trademark sense.

product, sales success, attempts to plagiarize the mark, and length and exclusivity of use. The careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment." <u>Coach Leatherware Co. v. AnnTaylor, Inc.</u>, 933 F.2d 162, 169 (2d Cir. 1991) (citation omitted).[15]

In arguing that ELIT has not acquired secondary meaning, Classic Liquor relies heavily on an April 2015 market research report that SPI commissioned from Ipsos (the "Ipsos Report"), a global market research company, which finds that "overall awareness of elit remains very low" and that "[t]he main reason to try elit by Stolichnaya is due to a desire to experiment with new brands." Moskowitz Decl. dated March 21, 2016, Ex. 34 at 36, 38. Classic Liquor also points to an SPI internal marketing document for elit by Stolichnaya, which states that "[t]he correct full name is: elit by Stolichnaya" and instructs, "[n]ever use: elit by Stoli, or Stoli elit. Wherever possible 'elit by Stolichnaya' should be written on one line." <u>Id.</u>, Ex. 42 at 3. As for sales success, Classic Liquor submits that elit by Stolichnaya's share of the vodka market is miniscule, as the product had only $6.6 million and $5 million in sales in 2014 and 2015, respectively. <u>See</u> Pl.'s Rule 56.1 Stmt. ¶ 63. And with respect to exclusivity of use, Classic Liquor

---

[15] In a variation on an argument rejected by the Court, <u>supra</u>, Classic Liquor argues, without citation to any authority, that SPI has waived its right to argue that ELIT has acquired secondary meaning because it did not bring a counterclaim on this basis. This argument is meritless. The strength of SPI's marks is squarely at issue and, in this case, that question turns on the extent to which ELIT has acquired secondary meaning.

observes that elit by Stolichnaya coexists in the marketplace with numerous other spirits brands that use variations of ELITE in trademark registrations and to market liquor products.

However, SPI has adduced some admissible evidence that ELIT has, in fact, achieved secondary meaning in the marketplace. This evidence shows, for example, that elit by Stolichnaya has been supported by an annual marketing budget in the range of $3 million per year. See Def.'s Rule 56.1 Stmt. ¶ 199; see also Strange Music, Inc. v. Strange Music, Inc., 326 F. Supp. 2d 481, 490 (S.D.N.Y. 2004) (citing an advertising budget of $3,350,000 over three years in support of a finding that a mark is strong). SPI also notes that the Ipsos Report cited by plaintiff indicates that awareness of elit by Stolichnaya has significantly increased since July 2014, that the brand enjoys strong retention rates, and that the brand's recognition on social media has substantially improved. See Def.'s Rule 56.1 Stmt. ¶ 202. Although internal documents indicate that SPI officially prefers to refer to the product as "elit by Stolichnaya," SPI also adduces evidence that the product is colloquially referred to as "elit." See Decl. of David W. Haller in Opp. to Classic Liquor Importers, Ltd.'s Mot. for Summ. J. dated April 4, 2016 ("Haller Decl. dated April 4, 2016"), Ex. 38. With respect to its market share, SPI observes that the exclusive, high-end vodka market is by definition small, and that marks for luxury brands can achieve secondary meaning without having meaningful market share. And as for the prevalence of the ELITE mark in the spirits marketplace, SPI

submits that many of the registrations identified by plaintiff have been cancelled or abandoned, and that those that have not are easily distinguishable from the ELIT Marks.

Taking all of the evidence together, and drawing all reasonable inferences in favor of SPI (as the Court must on plaintiff's motion), the Court finds that there is a genuine factual dispute as to whether the ELIT component of the ELIT Marks has acquired distinctiveness in its particular marketplace. And for the same reason, there is a genuine factual dispute as to the strength of the ELIT component of defendant's marks for purposes of the Polaroid analysis. In particular, although the Ipsos Report refers to "overall awareness" of elit by Stolichnaya as "very low," it also describes general awareness and social media recognition as significantly improving and states that "continued brand presence is expected to cascade into increased consumption." Moskowitz Decl. dated March, 21, 2016, Ex. 34 at 9, 36, 40. Given that the Ipsos Report was produced well over a year ago, and given that elit by Stolichnaya is a luxury product, the Court cannot conclude on the basis of a relatively thin record that there is no genuine dispute of fact as to whether consumers in the relevant market primarily associate ELIT with defendant. Though the Court is skeptical that SPI can make this showing at trial, it will not foreclose it from attempting to do so.[16]

---

[16] To be clear, the fact that there is a genuine factual dispute as to secondary meaning does not mean that plaintiff cannot prevail on

**Similarity of the Marks**.

"In applying this factor, courts consider whether the similarity of the marks is likely to cause confusion among potential customers," Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 394 (2d Cir. 1995), and "look[] at the visual and aural similarity of the marks, in addition to how they are presented in the marketplace." Ivoclar N. Am., Inc. v. Dentsply Int'l, Inc., 41 F. Supp. 2d 274, 280 (S.D.N.Y. 1998).

Here, on the one hand, the manifestations of the marks in the marketplace are not visually similar and the parties' trade dress is notably distinct. On the other, the ELITE and ELIT components of the marks are functionally equivalent in meaning and commercial impression. In addition, there is no genuine dispute that ELITE and ELIT are intended to be pronounced identically. Such aural confusion is particularly pertinent here given that customers at bars and restaurants typically order orally. See LaTouraine Coffee Co. v. Lorraine Coffee. Co., 157 F.2d 115, 117 (2d Cir. 1946) (finding that similarity between product names was "most striking in oral speech" since "a call for one [product] . . . is likely to produce the other").

---

its declaratory judgment claim. If plaintiff could show that its use of its marks poses no likelihood of confusion as a matter of law, even assuming that the ELIT component of defendant's marks has achieved secondary meaning, it would be entitled to summary judgment. As later explained in this Opinion and Order, however, the Court finds that plaintiff cannot make this showing at this stage of the proceedings.

Taking the similarities and dissimilarities of the marks together, this factor weighs slightly in favor of SPI.[17]

**Proximity of the products and their competitiveness with one another**. "The proximity inquiry asks to what extent the two products compete with each other." Brennan's, 360 F.3d at 134. The purpose of the inquiry, which considers both market proximity and geographic proximity, is "to determine whether the two products have an overlapping client base that creates a potential for confusion." Id. Classic Liquor argues that this factor is neutral because Royal Elite and elit by Stolichnaya both compete with dozens of other vodka brands. But the salient point is that Royal Elite competes directly with elit by Stolichnaya for the same customers. See Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C., 182 F.3d 133, 140 (2d Cir. 1999) ("When [parties] provide essentially the same service to the same customer base, their services are related and proximate . . . ." (internal quotation marks omitted)). Indeed, in plaintiff's presentations to potential distributors, elit by Stolichnaya is identified as one of a handful of vodkas against

---

[17] Plaintiff submits that the Court should defer to the USPTO's implied view — by virtue of having approved plaintiff's applications for publication — that plaintiff's marks do not give rise to a likelihood of confusion. While it is true that courts "accord weight to the initial conclusions of the Trademark Office," Genesee Brewing Co., 124 F.3d at 148 n.11 (internal quotation marks omitted), this Court sees little reason to do so where the publication decision of the USPTO was not accompanied by any analysis of the issues raised in a separate litigation. In addition, Classic Liquor successfully moved to stay opposition proceedings before the Trademark Trial and Appeal Board pending disposition of the instant action, which further undercuts its argument that the implicit determination of the USPTO warrants significant deference.

28

which the highest-tier Royal Elite product competes. See Def.'s Rule
56.1 Stmt. ¶ 171. As such, there can be no doubt that the products
at issue are in close proximity to one another. This factor favors
SPI.

**Likelihood that the senior user may "bridge the gap**." "This
factor concerns the likelihood that [a] senior user that is not in
direct competition with a junior user at the time a suit is brought
will later expand the scope of its business so as to enter the
junior user's market." U.S. Polo Ass'n, Inc. v. PRL USA Holdings,
Inc., 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011). Though SPI argues
that this factor weighs in its favor because it has already bridged
the gap, it is well established that where, as here, the relevant
"products are already in competitive proximity, there is really no
gap to bridge, and this factor is irrelevant to the Polaroid
analysis." Star Indus., Inc., 412 F.3d at 387.

**Evidence of actual confusion**. "Actual confusion is highly
probative of the likelihood of confusion, and proof of actual
confusion is generally shown through consumer surveys or anecdotal
evidence of confusion, or empirical studies or expert testimony."
Gucci Am., Inc. v. Gucci, 2009 WL 8531026, at *18 (S.D.N.Y. Aug. 5,
2009) (internal quotation marks and citations omitted).

Although SPI did not commission a consumer survey, the record
contains some evidence of confusion in the marketplace. Most
compellingly, as discovered by SPI in the course of this litigation,
a lounge in New York City known as Vandal lists both "Royal Elit"

29

(sic) and "Stoli Elit" on its nightclub's bottle menu. See Decl. of Richard Martell in Opp. to Classic Liquor Importers, Ltd.'s Mot. for Summ. J. dated April 4, 2016 ("Martell Decl. dated April 4, 2016"), ¶ 17, ECF No. 49.[18] It is at least plausible that customers viewing this menu would be likely to mistakenly believe that the two products are affiliated. In addition, a brand promoter hired by Classic Liquor referred to "Royal Elite" as "Royal Elit" in correspondence with Classic Liquor. See Def.'s Rule 56.1 Stmt. ¶ 223. Though neither of these isolated instances of actual confusion constitutes material evidence that consumers are actually confusing the products or their source, they are probative of how easily consumers might do so.[19] On balance, then, while this factor does not meaningfully tip the scales, it slightly favors SPI.

**Evidence that the imitative mark was adopted in bad faith**. "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting

_____

[18] Plaintiff objects that the photograph defendant provides of the bottle menu does not reveal the menu's association with Vandal on its face and that there is no evidence that any consumers have seen the menu. But plaintiff overlooks that the individual who attaches the photographic evidence to his declaration avers that he himself took the photograph of the bottle menu during a visit to Vandal. See Martell Decl. dated April 4, 2016, ¶ 17. The Court has no basis on summary judgment not to credit that sworn statement.

[19] SPI also argues that there is evidence of confusion on social media by virtue of the fact that a search for "elite" and "vodka" on Pinterest.com (a photo-sharing website) yields results that include photographs of both Royal Elite and elit by Stolichnaya. See Def.'s Opp. at 23. Given the contrived nature of the search, the Court does not find the results to constitute evidence of actual confusion. The results do, however, reinforce the Court's determination, discussed above, that ELIT is a descriptive, self-laudatory term.

the mark with the intent to sow confusion between the two companies' products." <u>Star Indus., Inc.</u>, 412 F.3d at 388.

Classic Liquor asserts that there is no evidence that its ROYAL ELITE mark was adopted in bad faith. To the contrary, it contends that Simon Alishaev, one of Classic Liquor's founders and a native of Uzbekistan, was inspired to choose ROYAL ELITE as his company's housemark by a legend regarding the "Royal Elite" fighting force of Tamerlane, the fourteenth-century conqueror who ruled over an empire encompassing part of modern-day Uzbekistan, <u>see</u> Pl.'s Br. at 25, and that this is reflected in its advertising.[20] In addition, Classic Liquor contends that Alishaev and his brothers are "landlords to a social hall known as the Elite Palace, and that reinforced [Alishaev's] inspiration to settle on the Royal Elite trademark, particularly after he heard from the [manufacturing] distillery that the brand of vodka that [it was] proposing to Classic was not generally produced for the local population in Russia, [but rather] only for the 'royal' high class government people." Pl.'s Rule 56.1 Stmt. ¶ 27.

The problem with this explanation is that, according to his own testimony, Alishaev only came up with the idea to use the word "Royal" in the product name on a trip to the manufacturing factory in Uzbekistan that occurred in May 2015 — some seven months after

---

[20] According to Classic Liquor's marketing literature, Tamerlane's "Royal Elite" fighters drank vodka for "strength" before going into battle and imbibed some more to celebrate their victories. Pl.'s Rule 56.1 Stmt. ¶ 25.

Classic Liquor applied to register "Royal Elite." See Def.'s Rule 56.1 Stmt. ¶ 229; Haller Decl. dated April 4, 2016, Ex. 11 at 44:15-45:5. In addition, Alishaev testified that he only learned about Tamerlane and "the history of Uzbekistan" after he thought to use the word "Royal." See Haller Decl. dated April 4, 2016, Ex. 11 at 45:6-13.

Thus, plaintiff's contentions that the ROYAL ELITE mark was inspired by the legend of Tamerlane's "Royal Elite" brigade and by the fact that the vodka is consumed primarily by upper-crust Uzbeks is flatly contradicted by the record. Whether plaintiff's apparent misrepresentation is an inadvertent (or immaterial) one or whether plaintiff is attempting to mask a bad-faith motive for adopting the ROYAL ELITE mark is a factual issue that cannot be resolved on summary judgment.[21]

**Respective quality of the products**. "This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Arrow Fastener Co., 59 F.3d at 398. Classic

---

[21] There is other evidence in the record that could be taken to suggest that plaintiff may have adopted its ROYAL ELITE mark in order to siphon defendant's goodwill in the ELIT Marks. Specifically, plaintiff's national sales director, David Jackson, instructed a Classic Liquor employee that the preferred placement for Royal Elite products is to the left of SPI's Stolichnaya products. See Def.'s Rule 56.1 Stmt. ¶ 172. This placement was in fact achieved at Vandal (the lounge that listed "Royal Elit" on its bottle menu). See Decl. of Lindsay Eshelman in Opp. to Classic Liquor Importers, Ltd's Mot. for Summ. J. dated April 4, 2016, ¶ 10, ECF No. 52. (SPI further contends that, according to a Vandal bartender, Classic Liquor requested this particular placement. But this is inadmissible hearsay.)

Liquor contends that because both parties' vodkas are luxury products, this factor favors it. SPI counters that elit by Stolichnaya is of a higher quality than Royal Elite, citing the opinion testimony of an SPI officer. These self-serving assertions are of little use to the Court, however. Without the aid of consumer survey evidence or expert testimony, the Court is unable to draw any conclusions as to the respective quality of the products. As such, this factor will be disregarded.

**Sophistication of consumers in the relevant market**. The "analysis of consumer sophistication considers the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Star Indus., Inc., 412 F.3d at 390 (internal quotation marks and alteration omitted). "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the product." Bristol-Myers Squibb Co., 973 F.2d at 1046.

Here, Classic Liquor argues that because elit by Stolichnaya is a high-end, expensive product, the consumer base for that product is more affluent and sophisticated. SPI responds that desire for luxury products and status symbols does not imply a sophisticated consumer. Though both parties make fair points, SPI's internal marketing documents reveal that elit by Stolichnaya is catering to a more

33

sophisticated segment of the vodka market. In particular, SPI's 2015 Preliminary Marketing Plan for elit by Stolichnaya identifies one of its objectives as to "[c]hallenge the perception of vodka within sophisticated drinking culture conversation." Moskowitz Decl. dated March 21, 2016, Ex. 42 at SPI-0000177. It also discusses partnering with *The New Yorker* "to elevate brand awareness among sophisticated drinking culture . . . and core consumers" and collaborating with S.T. Dupont on a fountain pen. Id. at SPI-0000178-79. Given this evidence, this factor favors Classic Liquor.

Taking the Polaroid factors together, it is clear that whether plaintiff's use of ROYAL ELITE gives rise to a likelihood of confusion with defendant's ELIT Marks is not ascertainable on summary judgment. On the one hand, if the ELIT component of defendant's marks has not achieved secondary meaning, defendant is entitled to no protection in that component of its marks standing alone, and plaintiff is entitled to the declaration it seeks. On the other hand, if the ELIT component of defendant's marks has achieved secondary meaning, it cannot be said that no reasonable trier of fact could find for SPI given the factors that favor SPI and the fact that the bad-faith factor is genuinely disputed. Accordingly, the Court denies plaintiff summary judgment on its declaratory judgment claim.

## II. Defendant's Counterclaims

The Court now turns to SPI's four counterclaims, all of which are premised on (1) the inclusion of the ® symbol next to the word

"ROYAL" on plaintiff's Royal Elite vodka bottle (falsely indicating that plaintiff has a trademark registration in ROYAL or ROYAL ELITE) and, (2) the inclusion of the words "Since 1867" on the front of the bottle.

SPI's first counterclaim is for false advertising and unfair competition under § 43(a)(1)(B) of the Lanham Act. Section 43(a)(1)(B) proscribes "us[ing] in commerce . . . any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a).

Classic Liquor argues that its erroneous inclusion of the ® symbol on its vodka bottle cannot give rise to a false advertising claim under the Lanham Act because § 43(a) applies only to misrepresentations relating to the inherent qualities or characteristics of the goods or services in question. See Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014) (noting that to prevail on a false advertising claim under the Lanham Act, "the plaintiff must . . . show that the defendants misrepresented an inherent quality or characteristic of the product" (internal quotation mark omitted)).[22] SPI does not attempt to argue that

---

[22] Plaintiff erroneously presents this argument as jurisdictional in nature. That framing is inapt, as "[i]t is firmly established . . .

Classic Liquor's misuse of the ® symbol misrepresented an inherent quality or characteristic of Royal Elite vodka. Instead, it submits that the Second Circuit has clarified that the requirement that the misrepresentation relate to an inherent quality or characteristic of a product is "essentially one of materiality." Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d. Cir. 1997). And because the registration symbol as used on plaintiff's bottles is literally false, materiality is presumed. See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007) ("When an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public." (internal quotation marks and alteration omitted)). Therefore, SPI argues, the "inherent quality or characteristic" requirement poses no impediment to its claim.

SPI's argument, however, is squarely foreclosed by the very authorities on which it relies. As the Second Circuit stated in National Basketball Ass'n, "in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product." 105 F.3d at 855 (emphasis added) (internal quotation marks omitted). And in an opinion issued after the briefing on the instant motion was

---

that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998).

completed, the Second Circuit reiterated: "Falsity alone does not make a false advertising claim viable; '[u]nder either theory [of falsity], the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product.'" Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016) (quoting Time Warner Cable, Inc., 497 F.3d at 153 n.3). Plainly then, SPI's contention that literal falsity is sufficient to satisfy the "inherent quality or characteristic" requirement is meritless. See, e.g., Abernathy & Closther, Ltd. v. E & M Advert., Inc., 553 F. Supp. 834, 837 (E.D.N.Y. 1982) (denying preliminary injunction on § 43(a) claim because "[w]hile the [d]efendants' statements that its offer is an 'exclusive T.V. offer' and made 'for the first time on T.V.' appear to be patently false, these claims do not relate to the 'inherent quality or characteristic' of the [d]efendants' product").

SPI relies heavily on Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519 (S.D.N.Y. 2012). There, as here, plaintiff brought a false advertising claim under the Lanham Act against a defendant based on the defendant's misuse of the ® symbol. See id. at 539-40. The district court, finding that defendant's use of the ® symbol was literally false and relying on the fact that plaintiff sought only injunctive relief, granted plaintiff summary judgment on the claim and enjoined defendant's misuse of the ®

symbol.[23] See id. at 540 ("Perfect seeks only injunctive relief. It does not claim to have suffered monetary harm, and does not seek money damages, from Majestic's misuse of the ® symbol. Accordingly, because Perfect has indisputably demonstrated that Majestic engaged in advertising that is literally false, the Court will grant summary judgment to Perfect on this claim . . . ."). Perfect Pearl is readily distinguishable, however, because SPI is seeking not only injunctive relief but monetary damages as well. See Def.'s Answer ¶ 65. More significantly, reading Perfect Pearl to suggest that literally false statements need not pertain to the inherent qualities or characteristics of the good or service in question would be inconsistent with the Second Circuit case law by which this Court is bound.[24]

---

[23] Notably, plaintiff's argument in Perfect Pearl appears to have been unopposed. See Reply Mem. of Law in Further Support of Pl.'s Mot. for Summ. J., Perfect Pearl Co., Inc. v. Majestic Pearl & Stone Inc., 10 Civ. 3998, ECF No. 76 at 1.

[24] SPI also relies on two other cases, but neither is relevant. The district court in Horizon Healthcare Services, Inc. v. Allied National, Inc., 2006 WL 344277 (D.N.J. Feb. 14, 2006), cancelled a party's trademark registration in part owing to registration symbol misuse, but no false advertising claim was brought in that case. See id. at *10. And while SPI describes Virginia Polytechnic Institute & State University. v. Hokie Real Estate, Inc., 813 F. Supp. 2d 745, (W.D. Va. 2011), as holding that a competitor has standing to bring a false advertising claim under the Lanham Act for misuse of the registration symbol, the district court in fact found that the counterclaimant in that case lacked standing to pursue its claim because it had not sufficiently alleged that it had suffered a competitive business injury. See id. at 757. That the district court dismissed the false advertising claim on narrower grounds does not amount to support for SPI's theory.

Classic Liquor's misuse of the ® symbol in no way relates to an "inherent quality or characteristic" of its vodka. The purpose of federal registration is to put the public on notice of the registrant's ownership of the mark; the goods or services to which the mark pertains are entirely irrelevant. See In re Int'l Flavors & Fragrances, Inc., 183 F.3d 1361, 1367 (Fed. Cir. 1999) ("Registration serves as constructive notice to the public of the registrant's ownership of the mark, see 15 U.S.C. § 1072, and thus prevents another user of the mark from claiming innocent misappropriation as a trademark infringement defense.").[25] Accordingly, Classic Liquor's misuse of the ® symbol is not actionable under § 43(a)(1)(B) of the Lanham Act as a matter of law.

SPI's Lanham Act claim also fails to the extent it is based on Classic Liquor's inclusion of the designation "Since 1867" on its vodka bottles, albeit for different reasons. "When an advertisement is shown to be literally or facially false, consumer deception is presumed, and 'the court may grant relief without reference to the advertisement's [actual] impact on the buying public.'" Time Warner Cable, Inc., 497 F.3d at 153 (quoting Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317 (2d Cir. 1982)). However, "only an

---

[25] This conclusion is reinforced by the Second Circuit's observation that "Section 43(a) is intended to reach false advertising violations, not false registration claims." La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1270 n.6 (2d Cir. 1974); see also Pernod Ricard USA LLC v. Bacardi U.S.A., Inc., 505 F. Supp. 2d 245, 250, 255-56 (D. Del. 2007) (holding that defendant's statement that it owned the rights to a trademark did not give rise to a false advertising claim under the Lanham Act).

<u>unambiguous</u> message can be literally false." <u>Id.</u> at 158 (emphasis in
original) (internal quotation marks omitted). Where "a plaintiff's
theory of recovery is premised upon a claim of implied falsehood,"
on the other hand, "a plaintiff must demonstrate, by <u>extrinsic</u>
evidence, that the challenged [statements] tend to mislead or
confuse consumers" and "that a statistically significant part of the
commercial audience holds the false belief allegedly communicated by
the challenged advertisement." <u>Johnson & Johnson * Merck Consumer</u>
<u>Pharm. Co. v. Smithkline Beecham Corp.</u>, 960 F.2d 294, 297-98 (2d
Cir. 1992) (emphasis added).

Here, SPI argues that the "Since 1867" designation is literally
false, such that it need not point to extrinsic evidence of consumer
deception. This contention is belied, however, by SPI's own
framework for analyzing the meaning of the statement:

> To the extent that "Since 1867" means that [Classic
> Liquor] has been making or selling vodka since 1867, the
> claim is literally false and consumer deception is
> presumed. . . . To the extent that "Since 1867" means that
> the same product has been made and for sale by others
> since 1867, the claim likewise is literally false and
> consumer deception is presumed. . . . [Classic Liquor]
> asserts that the "Since 1867" designation is true because
> the Tashkent distillery . . . allegedly can trace its
> roots to a distillery in Tashkent that was founded in
> 1867. That assertion is false or misleading.

Def.'s Opp. at 30-31 (citation omitted).

As is clear from SPI's own qualifying language (<u>i.e.</u>, "[t]o the
extent that 'Since 1867' means . . . ." ), the meaning of "Since

1867" is not unambiguous.[26] See Time Warner Cable, Inc., 497 F.3d at 158 ("[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."). As such, the "Since 1867" claim is not literally false and consumer deception must be established through extrinsic evidence of actual consumer reaction. Here, SPI has no such evidence. It did not commission a consumer survey and it points to no evidence other than one of its employee's opinions that "most consumers would believe that the 'Since 1867' designation signifies that Royal Elite vodka has been sold since 1867 and is a high-quality vodka that has stood the test of time." Martell Decl. dated April 4, 2016, ¶ 22. Because SPI has no extrinsic evidence of consumer confusion, it cannot prevail on an "implied falsity" theory of liability.[27]

---

[26] One of plaintiff's witnesses testified that some distributorship customers have asked about the significance of "Since 1867," a fact which further demonstrates that the message of the designation is ambiguous. See Haller Decl. dated April 4, 2016, Ex. 13 at 78:20-79:18.

[27] One could argue that, despite the Second Circuit's seemingly clear mandate that a message be "unambiguous" to be deemed literally false, it would be illogical to require extrinsic evidence of consumer deception if it were the case that each possible message conveyed by an ambiguous statement was indisputably false. SPI does argue that to the extent "Since 1867" refers to the year in which the manufacturing distillery was founded (as Classic Liquor contends), that message is false because the distillery has been modernized with new buildings and equipment since 1867. See Def.'s Opp. at 31. But Classic Liquor's contention is that "Since 1867" refers to the fact that the distillery was founded in 1867, not that the vodka has been produced in the exact same building using the exact same equipment that was in use in 1867. Therefore, the Court need not determine whether extrinsic evidence is necessary in the hypothetical circumstance described above.

To be sure, consumers might very well be misled by the "Since 1867" designation. Classic Liquor claims that "Since 1867" refers to the year in which the distillery that manufactures Royal Elite vodka was founded. But the average consumer may be more likely to understand the "Since 1867" designation to refer to the product or Classic Liquor itself than to somehow divine that it refers to the year that the manufacturing distillery was established.[28] While Classic Liquor argues that the historical background described on the back of its bottle clarifies the meaning of "Since 1867," that text does not even mention the year 1867.[29] Notwithstanding these concerns, the law in the Second Circuit is unequivocal: "a district court must rely on extrinsic evidence [of consumer deception or confusion] to support a finding of an implicitly false message." Time Warner Cable, Inc., 497 F.3d at 153 (emphasis and alterations in original) (internal quotation mark omitted); see also Am. Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 166 (2d Cir. 1978)

---

[28] Classic Liquor does, in fact, contend that the distillery has used essentially the same processes and recipe to produce vodka since 1867. This evidence is disputed, but the dispute is not relevant for present purposes because, even assuming the processes and recipe have materially changed over the years, Classic Liquor would still be entitled to summary judgment on the basis that SPI has no extrinsic evidence that consumers are misled.

[29] The relevant paragraph on the back of the bottle states, in full:

> Silky smooth and made from the world's finest golden wheat with Uzbekistan's fabled healing waters, Royal Elite traces its roots to the ancient court of Emperor Tamerlane and is produced by the venerable Tashkentvino distillery, renowned throughout Russia and Central Asia as the leading producer of fine vodkas, cognacs and wines.

Moskowitz Decl. dated March 21, 2016, Ex. 19.

42

("[T]he court's reaction is at best not determinative and at worst irrelevant. The question in such cases is what does the person to whom the advertisement is addressed find to be the message?"). Accordingly, Classic Liquor is entitled to summary judgment on SPI's Lanham Act counterclaim.

Classic Liquor also seeks summary judgment on SPI's three counterclaims brought under New York state law.[30]

Beginning with SPI's counterclaim for common law unfair competition, such claims are governed by the same standard as unfair competition claims under the Lanham Act except that they require an additional showing of bad faith. See Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005). Accordingly, because SPI's counterclaim under § 43(a)(1)(B) of the Lanham Act fails, SPI's common law claim fails as well. See, e.g., Luv N' Care, Ltd. v. Regent Baby Prods. Corp., 2014 WL 572524, at *3 (S.D.N.Y. Feb. 13, 2014) ("Because plaintiffs' claims fail under the Lanham Act their claims necessarily also fail under New York common law." (internal quotation marks and alterations omitted)).

By contrast, SPI's two counterclaims brought under §§ 349 and 350 of the New York General Business Law "are not mere Lanham Act

---

[30] SPI argues that Classic Liquor waived its right to seek summary judgment on these counterclaims by failing to present any argument as to them in its opening brief. While it is true that Classic Liquor did not specifically frame its argument in its opening brief as addressing these counterclaims, Classic Liquor clarified in its reply brief that it seeks summary judgment on these counterclaims for essentially the same reasons that it claims entitlement to summary judgment on SPI's Lanham Act counterclaim. It would elevate form over substance to find waiver under such circumstances.

analogues." Donini Int'l, S.P.A. v. Satec (U.S.A.), LLC, 2006 WL 695546, at *6 (S.D.N.Y. Mar. 16, 2006). To prevail under § 349 of the General Business Law, which proscribes deceptive acts and practices in commerce, three elements must be proved: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). "Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Id. (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (1995)). "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 324 n.1 (2002).

To the extent these statutory counterclaims are based on Classic Liquor's misuse of the ® symbol, the claims are dismissed. The inclusion of this symbol on plaintiff's vodka bottles — which, again, serves to put potential infringers of a mark on constructive notice that the mark is owned — was not consumer-oriented as a matter of law. See In re Int'l Flavors & Fragrances, Inc., 183 F.3d at 1367.

To the extent the counterclaims are based on the "Since 1867" designation, however, the claims survive. Critically, while the Lanham Act requires reference to extrinsic evidence to demonstrate

that consumers perceive an ambiguous statement as misleading, the inquiry under §§ 349 and 350 of the New York General Business Law is objective in nature, requiring courts to assess whether a given practice or advertisement is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Stutman, 95 N.Y.2d at 29 (internal quotation marks omitted). In other words, what proved fatal to SPI's Lanham Act counterclaim (and its common law counterclaim) is not a bar to its New York General Business Law counterclaims. See Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26 (noting that the reasonable-consumer test "may be determined as a matter of law or fact").

While Classic Liquor contends that SPI has suffered no damages as a result of Classic Liquor's use of the "Since 1867" designation, this is a disputed issue of fact. See Def.'s Rule 56.1 Stmt. ¶¶ 144, 245. Though SPI admitted during discovery that, as of February 26, 2016, it was unlikely that it had yet suffered monetary damages from Classic Liquor's use of the "Since 1867" designation, it also purported to still be investigating the issue. See Moskowitz Decl. dated March 21, 2016, Ex. 22 at 17-18. Accordingly, SPI may proceed to trial on its New York General Business Law counterclaims to the extent that they are based on the "Since 1867" designation.

Finally, although both parties previously demanded a jury trial, plaintiff contends that if the Court denies it summary judgment the Court should preside over a bench trial. Plaintiff premises this argument on the mistaken notion that SPI is seeking

only equitable relief on its counterclaims and is therefore not entitled to a jury trial. In fact, SPI is seeking monetary damages as well, see Def.'s Answer ¶ 65, and so the resolution of the counterclaims is, at least as to damages, for the jury. To the extent plaintiff still contends on other grounds that defendant is not entitled to a jury trial on its counterclaims, it may brief the issue in a motion in limine.

In sum, for the foregoing reasons, the Court, grants plaintiff's motion for summary judgment in part and denies it in part. In particular, the Court awards Classic Liquor summary judgment dismissing SPI's Lanham Act counterclaim and SPI's counterclaim for common law unfair competition. The Court denies Classic Liquor summary judgment, however, on its declaratory judgment claim and on SPI's counterclaims brought under §§ 349 and 350 of the New York General Business Law.

The parties are directed to contact the Court by no later than August 24 to set a firm trial date. The Clerk of the Court is directed to close document number 36 on the docket of this case.

Dated:    New York, NY
          August 19, 2016                          _____
                                                   JED S. RAKOFF, U.S.D.J.